## 19735

The STATE, Respondent, v. Art Leo ADAMS, Appellant
(201 S. E. (2d) 129)

*John E. Bishop, Esq.,* of *Mitchell, Bishop & Joe,* Greenville, *for Appellant,* cites:

*Messrs. John H. Nolen, Sol.,* of Greenville, and *Milton A. Smith, Asst. Sol.,* of Spartanburg, *for Respondent,* cite: 

December 4, 1973.

LITTLEJOHN, Justice:

Art Leo Adams was tried by a jury and convicted of selling heroin in violation of § 32-1510.49 of the Code of Laws of South Carolina (Cum. Supp. 1971). He argues on appeal that certain of his statutory and constitutional rights were violated in that the State's principal witness testified at the preliminary hearing that the offense occurred during the early hours of July 4, 1972, whereas the evidence at the trial showed that the offense occurred during the early hours of the preceding day.

A warrant for the arrest of Adams was issued on September 12, 1972, charging him with knowingly and intentionally selling a quantity of heroin on July 3, 1972. He requested and was afforded a preliminary hearing on October 16, 1972. At the hearing Isaac Murray Clontz an undercover agent, testified that on July 3, 1972, at about 11:45 p. m., he entered the Robinhood Club in Spartanburg, South Caro-

lina, and thereafter, with the aid of a confidential reliable informant, made a purchase of heroin from Adams about 30 minutes later, between 12:15 and 12:19 a. m.

Adams was tried on January 11, 1973, upon an indictment which recited the date of the offense as July 3, 1972, as did the arrest warrant. At the commencement of its case, the State sought to introduce evidence that Clontz entered the Robinhood Club on July 2 instead of July 3. Counsel for Adams objected to its admisison upon the ground that it was irrelevant to the offense charged which objection was overruled.

The State proceeded to adduce evidence that the Robinhood Club was open for business on Thurday and Sunday nights only. Adams was a member of a band which provided music on Sunday nights. Clontz testified that he entered the Club late Sunday night, July 2, at approximately 11:45 p. m., and made a purchase of heroin from Adams about 30 minutes later, which would have been between 12:15 and 12:19 a. m. in the early morning of Monday, July 3.

At the conclusion of the State's case, counsel for Adams moved for a directed verdict on the ground that the evidence presented constituted no proof of the offense charged, and for a mistrial upon the ground that the evidence differed substantially from that adduced at the preliminary hearing. He argued that it was impossible for him to prepare a defense, and that he was surprised by the change in testimony as to the date. These motions were denied.

From a review of the State's evidence, it is obvious that the State anchored its offense to the proposition that Clontz, the undercover agent, came to the Robinhood Club, where Adams worked, late on the night of Sunday, July 2, and made the purchase about 30 minutes later, early in the morning on Monday, July 3. This was consistent with both the warrant and the indictment. When Adams proceeded with

his defense, he submitted an unrefuted alibi for the late hours of Monday, July 3, and the early hours of Tuesday, July 4. In addition, he submitted evidence accounting for his activities late on the night of Sunday, July 2, and the early morning of Monday, July 3, which is the critical time involved in the prosecution.

At the conclusion of all the evidence, counsel for Adams again moved for a directed verdict and for a mistrial upon the aforementioned grounds. These motions were also denied. Adams was convicted and sentenced.

Although couched in the context of several constitutional provisions, the crux of Adams' contention is that he was misled by the State's witness' testimony at the preliminary hearing and was taken by surprise upon the trial of his case in regard to the date of the alleged sale. If Adams was genuinely surprised, a new trial would be in order; however, we do not think that the record substantiates his position.

At the outset, it is worthy of notice that the position now assumed by Adams was equally as available to him at the preliminary hearing. The warrant issued for his arrest, and which brought about the hearing, specified the correct date. Even as the testimony at the trial was to some extent inconsistent with the testimony at the preliminary hearing, the testimony at the preliminary hearing was inconsistent with the arrest warrant. However, the transcript of the preliminary hearing reveals that no motion was made to dismiss the charges on the ground that the proof offered did not substantiate the offense as charged in the warrant.

The transcript of the preliminary hearing also demonstrates that on more than a single occasion Clontz on cross-examination testified that the sale occurred on July 3, 1972. This was consistent with the warrant but obviously inconsistent with his own testimony that he went to the club about 11:45 p. m. on July 3.

Any claim of surprise must be further discounted by the fact that both Adams and his counsel knew that the Robin-

hood Club was not open on Monday night going into Tuesday morning.

The indictment upon which Adams was tried specified the correct date. Without reserving his objection to the relevancy of Clontz' account of the sequence of events which occurred during the late hours of Sunday, July 2, leading up to the sale of heroin during the early hours of Monday, July 3, counsel for Adams fully cross-examined the undercover agent on the issue. While it is true that an unrefuted alibi was presented on behalf of Adams for the night of July 3 going into July 4, 1972, it also appears that both Adams and his witness, Moses Dillard, were able to give a detailed account of Adams' activities at the Robinhood Club on the night of July 2-July 3, 1972. We are not convinced that this case presents an instance of genuine surprise.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.